**Dated: January 04, 2022.**

_____
**TONY M. DAVIS
UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 21-10462-tmd |
| | § | |
| DAWAR SYED NAWAB | § | |
| | § | |
| DEBTOR | § | CHAPTER 7 |

## MEMORANDUM OPINION

To determine whether debtors have "primarily consumer debt," and thus whether their cases are subject to dismissal for abuse under section 707(b), should courts consider (1) whether more than 50% of the total dollar amount of the debt is consumer in nature, (2) whether the number of consumer creditors exceeds the number of business creditors, or (3) some combination of the two?

1

I.    **BACKGROUND**

Dawar Syed Nawab, a medical device salesman, filed bankruptcy under Chapter 7 asserting that he has primarily business debt.[1] According to the Debtor, he filed for bankruptcy after incurring significant high-interest business loans investing in a fraudulent Ponzi scheme now under investigation by the FBI.[2]

In his bankruptcy schedules, the Debtor identified eight of his thirteen creditors—the majority—as business debt creditors.[3] Out of his total indebtedness of $626,086, the Debtor's schedules list $388,560 as consumer debt and $237,526 as business debt.[4] Thus, in dollar value, consumer debt is 62% of the total debt.[5] Of this consumer debt, roughly $337,000 is for a mortgage on the Debtor's homestead and $48,500 is for a Tesla Model S that the Debtor purchased in March 2021.[6]

|  | Number of Creditors | Claim Totals |
|---|---|---|
| Consumer Debt | 6 | $388,560 |
| Business Debt | 8 | $237,526 |

Because the Debtor's total amount of consumer debt is larger than the total amount of business debt, the U.S. Trustee says that the debt is primarily consumer and that the case should be dismissed as abusive under 11 U.S.C. § 707(b).

---

[1] Means Test, ECF 8, pg. 47; Petition, ECF 1 pg. 6.
[2] DR Affidavit, ECF 28, pg. 1.
[3] Am. Schedules, ECF 17, pgs. 2-6.
[4] Stip. of Facts, ECF 27, pg. 2-3.
[5] Stip. of Facts, ECF 27, pg. 2-3.
[6] Schedules, ECF 8 pgs. 13-14.

In response, the Debtor says that he has primarily business debt because more than half of his creditors are business creditors. He also argues that the only reason the dollar amount of the consumer debt exceeds the dollar amount of the business debt is because he has a mortgage on his home and a loan on his vehicle, both of which he intends to keep by continuing to make the monthly payments due each creditor.[7] The Debtor doesn't dispute that these claims are consumer debt. Instead, he argues that Congress enacted 707(b) to prevent high income debtors from running up credit card debt and then trying to discharge that debt in bankruptcy, and that Congress did not intend to discourage people from taking business risks.[8] He says he filed bankruptcy because he was a victim of a fraud scheme and incurred almost all his unsecured debt investing in a business venture.[9] Thus, he argues, his debt is primarily business debt and section 707(b) should not apply to him.[10]

II. **ANALYSIS**

Section 707(b) provides that the Court may dismiss a case filed by a debtor "whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." Under 11 U.S.C. § 707(b)(2), a presumption of abuse arises where a debtor's debts are found to be "primarily consumer debts." While special circumstances may act to rebut this presumption of abuse, the parties agree that none are present here.[11] The Debtor concedes that if his debts are found to be "primarily consumer" in nature, he will not be eligible for relief under Chapter 7 given his $196,464 annual income.[12]

---

[7] Stmt of Intentions, ECF 8, pg. 43.
[8] Resp. to Mtn to Dismiss, ECF 22, pg. 4.
[9] Resp. to Mtn to Dismiss, ECF 22, pg. 4.
[10] Resp. to Mtn to Dismiss, ECF 22, pg. 4.
[11] Stip. of Facts, ECF 27, pg. 2.
[12] DR Affidavit, ECF 28, pg. 1; Stip. of Facts, ECF 27, pg. 2. $196,464 is much more than the median income for a one-person household in Texas.

In support of his position that the debt is primarily business, the Debtor relies on a Fifth Circuit case from 1988, *In re Booth*.[13] In *Booth,* the debtors had consumer debts of $310,303 owed to nine creditors,[14] and business debts of $332,187 owed to six creditors.[15] And so the amount of the debtors' consumer debt was less than the amount of their business debt, but was owed to more creditors.[16] The Fifth Circuit found that the term "primarily" "suggests an overall ratio of consumer to non-consumer debts of over fifty percent," and that, in applying section 707(b), "consumer debts should be evaluated not only by amount, but by their relative number."[17] Looking at the Booths' debts, the Fifth Circuit held that they were primarily business debts.[18]

Besides the Fifth Circuit, the Ninth and Tenth Circuits have also addressed this issue.[19] In *In re Kelly,* the Ninth Circuit concluded that "primarily consumer debts" should be understood to mean more than half of the dollar amount owed.[20] Applying a dictionary definition of the word "primarily," which was defined as "for the most part," the Ninth Circuit held that "when 'the most part'—i.e., more than half—of the dollar amount owed is consumer debt, the statutory

---

[13] *In re Booth,* 858 F.2d 1051 (5th Cir. 1988).
[14] *Id.* at 1055. This amount did not include state and federal taxes because they were undetermined when the motion to dismiss was considered. Somewhat inconsistently, the Fifth Circuit said, in dicta, that the ratio of consumer to non-consumer debt in the Booths' case, "even allowing for $50,000 in additional taxes," was "not great enough under these facts" to warrant dismissal under section 707(b). *Id.* But if $50,000 in taxes were added to their consumer debt, they would have $360,303 in consumer debt owed to nine creditors and business debt of $332,187 owed to six creditors, meaning more than fifty percent of the total number *and* amount of the Booths' debt would have been consumer debt. And yet, the Fifth Circuit found the Booths' debt to be primarily business.
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *In re Kelly,* 841 F.2d 908 (9th 1988); *Stewart v. U.S. Tr. (In re Stewart),* 175 F.3d 796 (10th Cir. 1999).
[20] *In re Kelly,* 841 F.2d at 913.

threshold is passed."[21] Because consumer debts comprised $152,000 of the debtors' total debt of $172,000, the Ninth Circuit found the debtors to have primarily consumer debt.[22]

Following the Ninth Circuit, the Tenth Circuit, in *In re Stewart*, also defined "primarily" in the context of section 707(b) to mean more than fifty percent of the dollar amount of the debtor's debt.[23] The Tenth Circuit examined how "primarily" was defined in a non-bankruptcy context, finding that a similar term, "primary duty," in the labor law context had been defined as "over fifty percent, of the employee's time."[24] The Tenth Circuit concluded that the meaning of "primarily" should be defined as "consumer debt exceeding fifty percent of the [dollar amount of] total debt."[25] Because $633,000 of the debtor's total indebtedness of $837,009 was consumer in nature, the Tenth Circuit held that the debtor had "primarily consumer debts."[26]

This issue has also been addressed by lower courts, and the majority view now appears to be that only the dollar amount of a debtor's debts should be used to evaluate whether a debtor has primarily consumer debts.[27] In 2013, the Bankruptcy Court for the Southern District of Texas also adopted the majority view.[28]

---

[21] *In re Kelly,* 841 F.2d 908, 913 (9th 1988)
[22] *Id.*
[23] *Stewart v. U.S. Tr. (In re Stewart),* 175 F.3d 796, 808 (10th Cir. 1999).
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *See In re McDowell*, 2013 WL 587312, at *7, n4 (Bankr. S.D. Tex. 2013) ("The Fifth Circuit in *Booth* also indicated that the total number of consumer debts relative to the number of non-consumer debts is relevant to the determination of whether the debtor has primarily consumer debts. This is the minority position; a majority of courts now look solely to the dollar amount of the debt to determine whether it is primarily consumer."); *In re Hoffner,* 2007 WL 4868310, at *2-3 (Bankr. D.N.D. Nov. 21, 2007) (noting that only a minority of courts "consider both the percentage of consumer debt as well as the number of consumer debts in deciding whether the debt is primarily consumer debt.").
[28] *In re McDowell*, 2013 WL 587312, at *7 (Bankr. S.D. Tex. 2013) ("Finally, the term 'primarily consumer debts' in section 707(b) means that the consumer debts must amount to more than half of the total dollar amount owed."). *See also In re Beacher*, 358 B.R. 917, 920 (Bankr. S.D. Tex. 2007) ("Although the statute defines 'consumer debt,' it does not define 'primarily.' In this case, the U.S. Trustee argues that 'primarily consumer debt' means that more than 50% of the *amount* of debt is consumer debt, without regard to whether more than 50% of the *number* of debts is consumer debt. Counsel for Debtors agreed and the Court so holds."). *But see In re Rucker*, 610

5

Given that the majority position—looking at the amount of debt alone—has now solidified, it seems unlikely that the Fifth Circuit would adopt a view that would place it out of line with its sister circuits were this issue to come before the Fifth Circuit again. Here, the Debtor has conceded that 62% of the dollar amount of his total debt consists of consumer debts; his debts are therefore "primarily consumer debts," and section 707(b) applies to this case.

But, as noted by the Debtor, this decision does create an odd incentive for the Debtor. Specifically, after his case is dismissed under 707(b), he could immediately sell his house or car to reduce his ratio of consumer debt to below 50% of his total debts, then refile his petition under Chapter 7 and end up in the same position that he would have been in had his case never been dismissed.

In addition, dismissal in cases such as this may be inconsistent with the primary intent of 707(b); preventing opportunistic abuse of the bankruptcy system by those who seek to discharge irresponsibly acquired debts.[29] Aside from his home and auto loans, essentially all the Debtor's debts are business debts incurred investing in what turned out to be a fraudulent scheme. The Debtor did not file bankruptcy because of his car or mortgage payments, yet the law treats him as if he acquired this property imprudently. The competing goals of preventing abusive filings and

---

B.R. 570, 576 (Bankr. N.D. Tex. 2019) ("The Code does not provide a standard or test for assessing if debts are 'primary' consumer or business based. But the Fifth Circuit has held that, in deciding if debts are primarily consumer or business based, both the dollar amount and the relative number of claims attributable to each is important.") (citing *In re Booth*, 858 F.2d 1051, 1055 (5th Cir. 1988)). Yet in *Rucker*, both the total amount of the debt and the number of claims favored a finding that the debt was primarily business debt.

[29] *See, e.g., In re Krohn,* 886 F.2d 123, 125-26 (6th Cir. 1989) (citations and internal quotation marks omitted) ("In essence, § 707(b) allows a bankruptcy court to deal equitably with the unusual situation where an unscrupulous debtor seeks to enlist the court's assistance in a scheme to take unfair advantage of his creditors; it serves notice upon those tempted by unprincipled accumulation of consumer debt that they will be held to at least a rudimentary standard of fair play and honorable dealing.")

allowing debtors to have a fresh start might well be better served were courts allowed to examine the totality of the circumstances.

Based on this, the Debtor asks me to look beyond the statute and, by judicial fiat, pronounce a "sensible" result under the facts here. But I am not free to rule by fiat. I am constrained to rule as I think the Fifth Circuit would, which means I am constrained to rule that this Debtor has primarily consumer debt.

### III. CONCLUSION

As the Debtor's debts are primarily consumer in nature, section 707(b) applies to this case and the Trustee's Motion to Dismiss is granted.

# UNITED STATES BANKRUPTCY COURT
## Western District of Texas
## Austin Division

**Bankruptcy Case No.:** 21−10462−tmd
**Chapter No.:** 7
**Judge:** Tony M. Davis

**In Re:** Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):
Dawar Syed Nawab
9901 Whitley Bay Drive
Austin, TX 78717
**SSN/TAX ID:**
xxx−xx−7601

## NOTICE OF DISMISSAL

You are hereby notified that an Order Dismissing the above case was entered:

   for Debtor on **1/4/22**　　　　　　　　　　for Joint Debtor (if any) on **N/A**

Dated: 1/4/22

                              Barry D. Knight
                              Clerk, U. S. Bankruptcy Court

[Notice of Dismissal (BK)] [NtcDsmBKapac]